# CHARLESTON.

D. H. BALDWIN & Co. *v.* W. VAN WAGNER & S. B. GRAY.

*(GREEN, JUDGE, absent.)

Submitted Nov. 9, 1889.—Decided Nov. 20, 1889.

SALE—CONDITION PRECEDENT—RESERVED TITLE.

Where a piano was delivered under an agreement in writing purporting to rent the same at $10.00 per month, the owner

*On account of illness.

agreeing that when $300.00, the value of the piano, was paid in such monthly payments or otherwise, the title to the piano should rest in the renter; *Held,* That such writing showed a sale upon a condition precedent, and under the provisions of our statute— sec. 3, c. 74, Code 1887—the reservation of the title, unless a notice thereof is duly recorded, is void as to the creditors of the purchaser.

*Simms & Enslow* and *W. N. Miller* for plaintiff in error.

*Doolittle & Bryan* for defendant in error.

SNYDER, PRESIDENT:

In January 1883, Wm. Van Wagner recovered a judgment against S. B. Gray before a justice of Cabell county, which was in December 1888, revived and an execution issued thereon. The execution was placed in the hands of a constable and by him levied on a piano in the possession of said Gray. Thereupon D. H. Baldwin & Co. filed their petition and bond under the statute—sec. 151, c. 50 Code 1887— claiming that said piano was their property, and the justice, as required by said statute, issued an order directing the constable to turn over to Baldwin & Co. the piano; and at the same time the justice summoned the parties before him to try the right of said Baldwin & Co. to the piano. On February 22, 1889, all the parties appeared and the justice, after hearing the evidence, decided that the piano was liable for the satisfaction of said execution and gave judgment in favor of Van Wagner against D. H. Baldwin & Co., and their sureties for $145.55, the amount due on said execution.

Baldwin & Co. then appealed the case to the Circuit Court of said county, which court on March 26, 1889, affirmed said judgment and the defendants then obtained this writ of error.

All the facts proved in the case before the Court are certified and they show, that D. H. Baldwin & Co. of Cincinnati, Ohio, were dealers and owners of musical instruments, and on January 31, 1888, they placed the piano in controversy, together with a stool and scarf, in the possession of said S. B. Gray at his dwelling in the city of Huntington, in pursuance of a written agreement; at that time the piano was new and valued at $300.00; that ten dollars per month is the usual and reasonable rental for such a piano; and that

a new piano after it has been used becomes a second-hand instrument and depreciates very rapidly in salable and rental value, so much so, that, after being used, its saleable and rental value will be but about one half that of a new instrument; that there was no other agreement between the parties than that contained in the aforesaid writing; that Gray has paid to Baldwin & Co., in addition to the money and organ specified in said writing, forty dollars as shown by three receipts which are in the form used by Baldwin & Co. for money received on either sales or rentals of pianos; and that said piano was levied upon and replevied as hereinbefore stated. The receipts referred to are signed by D. H. Baldwin & Co. and state: "We acknowledge receipt of twenty dollars, as payment on piano, &c."

The written agreement is as follows:

JANUARY 31ST, 1888.

"This agreement witnesseth, that I, S. B. Gray, residing at Huntington, West Va., have this day rented from D. H. Baldwin & Co. one D. H. Baldwin & Co. piano, style 'M,' No. 75,763, with stool and scarf valued at three hundred dollars, for the term of tweenty four months from date, to be used only by family and friends in my said residence, and not to be removed therefrom without the written consent of said D. H. Baldwin & Co. endorsed hereon. I agree to pay without demand to D. H. Baldwin & Co. at their office, 158 West Fourth street, Cincinnati, Ohio, or to any person they may direct in writing, as rent for said instrument, the sum of $60.00 (one organ valued at $35.00 and $25.00 cash) dollars in advance, and thereafter ten dollars per month, payable monthly on the thirty first day of each month. All rent not paid when due to bear six per cent. interest. Said renting may at any time be terminated by said D. H. Baldwin & Co., and at their option, upon my failure to pay said rent when the same shall become due, or by the use of said instrument in any manner other than that provided for above, or the removal of said instrument from my residence above described, or the abuse of the same, or whenever said D. H. Baldwin & Co., from any circumstance, shall have reason to fear for the safety or proper treatment of their instrument. I agree to take good care of said instrument, keep the same

in good order, and so to return the same to said D. H. Baldwin & Co. whenever said renting may be terminated, whether at the expiration of the time above stated or upon my failure to comply with any of the terms above named. Also that there is no alteration or modification of this contract, either written or verbal, existing, and that it is subject to the approval of D. H. Baldwin & Co. at Cincinnati, O.

S. B. GRAY.

"It is further agreed between D. H. Baldwin & Co. and S. B. Gray, that said S. B. Gray may at any time during the above term of renting, purchase said instrument, by paying the above valuation therefor, with interest at six per cent. per annum, and then, and in that case only, the rent theretofore paid, with interest at six per cent. per annum from date of payment, shall be deducted.

Witness.

S. B. GRAY,<br>D. H. BALDWIN & Co."

It is apparent that the decision of this case depends essentially upon the true meaning and effect of this written agreement, as the other facts show this was the only agreement by which Gray obtained possession of the piano. In determining the purpose and meaning of the agreement, we may look to the situation and circumstances surrounding the parties at the time they made it, but unless there is a latent ambiguity, we can not consider the subsequent acts or declarations of the parties, whether written or oral; because the true inquiry is, not what the parties may have intended or supposed they were expressing, but what the words used by them do express. The name given to the transaction, or even the form of the instrument, can not change its character. In determining the nature of the contract courts will look to its substance and real purpose rather than its form or name. But if the substance and purpose do not clearly define the character of the transaction, then the form and the name given to the instrument by the parties may be considered in determining its real character and purpose. In respect to contracts, more or less like the one before us, there are many decisions, but, so far as I have been able to discover, none by the Courts of Virginia or of this State, which

have any direct bearing upon the question here presented. According to the great weight of authority, the agreement in this case is, either a bailment *locatio rei*, a hiring, or a conditional sale. The principal difference between a sale and a hiring is, that in the former case the ,owner parts with the whole proprietary interest in the thing, while in the latter he parts with it only for a temporary use and purpose. In a sale, the thing itself is the object of the contract; in hiring the use alone is its object. A conditional sale is a contract by which the owner parts with the title of the thing upon some specified condition either precedent or subsequent. Under our statute, the sale of any goods or chattels, whether the sale be conditional or otherwise, when the possession is delivered to the buyer, is void as to the creditors of, and purchasers without notice from, the buyer, unless the conditions of the sale is duly recorded. Sec. 3, ch. 74, Code. But in the case of a renting or hiring of goods and chattels, unless, perhaps, when the goods remain in the possession of the bailee for five years, the recording statute has no application, and if the contract is valid between the parties it is also binding upon creditors and purchasers. As this is a controversy between the creditors of the person having possession of the piano and the persons claiming to be the owners of it, the important inquiry is, is the said written agreement of January 31, 1888, properly interpreted, in fact a hiring, or a conditional sale of the piano; for, if it is the latter the judgment of the Circuit Court must be affirmed and if the former it must be reversed.

The first part of the agreement is unquestionably a lease or hiring of the piano to Gray. This is plain not only from its form and name, but from its substance and the purpose expressed by its terms. This portion of it is executed by Gray alone, and in it he declares, that he has rented from D. H. Baldwin & Co., one piano *etc.*, of the value of $300.00, for the term of twenty-four months for the use of his family and friends; and as rent therefor he has paid $60.00 in advance, and agrees to pay $10.00 per month on the 31st day of each month, and he agrees to return the same to D. H. Baldwin & Co., in good order whenever the said renting may be terminated, whether at the expiration of the

term or upon the failure to comply with any of the terms of the renting. So far this agreement is simply a *locatio rei,* or hiring. But appended thereto as a part of the same agreement, executed by both Gray and D. H. Baldwin & Co., is the further stipulation between the parties whereby it is agreed that Gray at any time, during the term aforesaid, may purchase the said instrument by paying the above valuation therefor with interest, and then, and in that case only, the rent theretofore paid shall be deducted. This portion of the agreement, it seems to me, is just as truly and plainly a conditional sale of the piano to Gray as the first part of it is a renting of the piano to Gray. As the final contract must control, the whole agreement must be regarded as a sale upon a condition precedent. It is evident from the terms here used, that Baldwin & Co., did not trust to the personal responsibility of Gray for payment or to unconditionally part with the title to the piano, but they did expressly agree and bind themselves to part with the title upon the condition, that Gray should, at any time, within twenty four months pay to them as rent or otherwise a sum equal to the value of the piano. This being, as we have seen, a condition precedent, the title to the piano, *as between the parties themselves,* did not pass to Gray, but remained in Baldwin & Co., and would so continue to remain until the performance of said condition by the payment of all the purchase-money. *McGinnis* v. *Savage,* 29 W. Va. 362; *Harvey* v. *R. I. Locomotive Works,* 93 U. S. 664; *Loomis* v. *Bragg,* 50 Conn. 228; 47 Am. R. 638; *Knittel* v. *Cushing,* 57 Tex. 354; 44 Am. R. 598; *Lucas* v. *Campbell,* 88 Ill. 447; *Hine* v. *Roberts,* 48 Conn. 267.

There is some conflict of authority in respect to contracts such as the one before us, but as we are controlled in this case by the special provisions of our statute, it is not necessary to review the decisions of other States. Under our statute, as before stated, whenever there is a sale of personal property, whether such sale be absolute or conditional and whether in the latter case the condition is precedent or subsequent, and the possession of the property is delivered to the buyer, any contract for the retention or reservation of the title until the same is paid for, or otherwise,

shall be void as to creditors of, and purchasers from, the buyer, unless a notice of such reservation be recorded. Here Baldwin & Co., delivered the possession of the piano to Gray upon a contract for a conditional sale, reserving the title to the piano until the value of it should be fully paid, but as they failed to have their contract recorded as required by the statute, the said reservation. is void as to the creditors of Gray. For these reasons, the judgment of the Circuit Court is affirmed.

AFFIRMED.